OPINION
{¶ 1} Appellant, Donald Kaeppner ("Kaeppner"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of appellee, Leading Management, Inc. dba University Inn of Columbus ("University Inn"), in this slip-and-fall negligence action. For the following reasons, we affirm.
 {¶ 2} On February 20, 2003, Kaeppner was a guest at the University Inn in Columbus, Ohio. Access to Kaeppner's room was from a carpeted exterior sidewalk running the length of the motel and bordering the parking lot. A roof overhang (the "overhang") extended partially across the sidewalk. On the morning of February 20, 2003, having decided to stay another week at University Inn because of bad weather, Kaeppner retrieved something from his car, which was parked in front of his room. After returning from the parking lot, Kaeppner again exited his room onto the carpeted sidewalk and walked toward the motel office.
 {¶ 3} Although it was not snowing at the time, Kaeppner noticed "a lot of snow" shoveled into piles in the parking lot, with shoveled pathways providing access between guests' rooms and cars. (Depo. at 16.) The sidewalk had been cleared of snow and salted, but was, nevertheless, wet and icy, with "a mixture of water spots, ice spots, and salt." (Depo. at 21.) Kaeppner testified that water was dripping from the overhang onto the sidewalk. Appreciating the wintry conditions, Kaeppner testified: "I was trying to be careful, trying to stay off a bad part. I was walking right up against the building." (Depo. at 21.) Kaeppner walked past the motel office door to check the condition of Olentangy River Road. Shortly after passing the motel office door, Kaeppner slipped and fell, injuring his right wrist and hip. Kaeppner walked approximately 100 yards from his room before falling.
 {¶ 4} On January 5, 2005, Kaeppner filed a complaint in the Franklin County Court of Common Pleas, asserting a single claim of negligence against University Inn. Kaeppner alleged that he slipped and fell on an unnatural accumulation of ice, resulting from melted snow dripping through a leak in the overhang. Kaeppner alleged that University Inn breached its duty of ordinary care by failing to remove the hazard posed by the unnatural accumulation or to warn Kaeppner of the hazard, and that such breach was the proximate cause of his injuries. On September 21, 2005, University Inn moved for summary judgment, arguing that Kaeppner had no evidence that he slipped and fell on an unnatural accumulation of ice. The trial court granted University Inn's motion for summary judgment on November 17, 2005, and Kaeppner filed a timely notice of appeal.
 {¶ 5} In his single assignment of error, Kaeppner asserts:
THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT ON THE GROUNDS THAT APPELLANT DONALD KAEPPNER FELL ON A NATURAL ACCUMULATION OF ICE AND SNOW WHEN IT IGNORED OHIO LAW ON THE DUTY TO PROVIDE REASONABLE MEANS OF INGRESS AND EGRESS AND WHERE SIGNIFICANT QUESTIONS OF FACT REMAINED.
Kaeppner argues that the trial court erred by failing to find that University Inn breached a duty to provide Kaeppner with reasonable means of ingress and egress to his motel room and by failing to recognize genuine issues of material fact as to whether the accumulation of ice upon which Kaeppner fell was natural and was open and obvious.
 {¶ 6} Appellate review of summary judgments is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's grant of summary judgment, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus,N.A. (1992), 83 Ohio App.3d 103, 107; Brown at 711.
 {¶ 7} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 8} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v.Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the non-movant must then produce competent evidence of the types listed in Civ.R. 56(C) showing that there is a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 {¶ 9} Bearing these standards in mind, we turn our attention to Kaeppner's negligence claim. To establish a cause of action for negligence, a plaintiff must show the existence of a duty, breach of that duty, and an injury proximately caused by the breach. Texler v. D.O. Summers Cleaners Shirt Laundry Co.
(1998), 81 Ohio St.3d 677, 680. To defeat a properly supported motion for summary judgment in a negligence action, the plaintiff must first demonstrate a duty owed him by the defendant.Bartholic v. Am. Elec. Power Serv. Corp. (June 29, 1993), Franklin App. No. 93AP-245; Stanger v. Waterford Tower Co.
(Aug. 25, 1994), Franklin App. No. 94APE03-371. The plaintiff must then present evidence from which reasonable minds could conclude that the defendant breached that duty and that the breach was the proximate cause of the plaintiff's injuries.Stanger, citing Porter v. Miller (1983), 13 Ohio App.3d 93.
 {¶ 10} An owner or occupier of premises owes business invitees, such as Kaeppner in this case, a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger. Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203. However, the Supreme Court of Ohio has consistently held that an owner or occupier's duty of ordinary care does not extend to natural accumulations of ice and snow. Debie v.Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38; Sidlev. Humphrey (1968), 13 Ohio St.2d 45; Brinkman v. Ross (1993),68 Ohio St.3d 82. Thus, a landowner has no duty to remove natural accumulations of ice and snow, even if such conditions exist for an unreasonable amount of time. Debie at 41.
 {¶ 11} Ohio courts have recognized exceptions to the general rule that an owner or occupier of property owes no duty to invitees regarding natural accumulations of ice and snow. For example, if an owner or occupier of property is shown to have had actual or implied notice that a natural accumulation of ice or snow on his or her property has created a condition substantially more dangerous than a business invitee should have anticipated by reason of knowledge of conditions prevailing generally in the area, negligence may be established. Debie. Also, where an owner or occupier is actively negligent in permitting or creating an unnatural accumulation of ice and snow, the no-duty rule is inapplicable. See Lopatkovich v. Tiffin (1986),28 Ohio St.3d 204, 207. To survive a properly supported motion for summary judgment in this type of case, the plaintiff must produce evidence to establish either that: (1) the natural accumulation of ice and snow was substantially more dangerous than the plaintiff could have anticipated and that the land owner had notice of such danger; or (2) that the land owner was actively negligent in permitting an unnatural accumulation of ice and snow to exist. Sasse v. Mahle (Nov. 19, 1999), Lake App. No. 98-L-157; see Martin v. Hook SuperX, Inc. (Mar. 18, 1993), Franklin App. No. 92AP-1649.
 {¶ 12} Here, Kaeppner relies on the second exception to the no-duty rule, alleging that he fell on an unnatural accumulation of ice. In his complaint, Kaeppner alleged that the ice upon which he fell resulted from melted snow dripping onto the sidewalk through a leak in the overhang and constituted an unnatural accumulation. This court has distinguished between natural and unnatural accumulations of ice and snow, stating: "[A] natural accumulation * * * is one which accumulates as a result of an act of nature, whereas an unnatural accumulation is one that results from an act of a person." Coletta v. Univ. ofAkron (1988), 49 Ohio App.3d 35, 37. This court has also quoted the following definition of "unnatural accumulation" from the Sixth District Court of Appeals:
"`Unnatural' accumulation must refer to causes and factorsother than * * * the inclement weather conditions of low temperature, strong winds and drifting snow, i.e., * * * to causes other than the meteorological forces of nature. By definition, then, the `unnatural' is the man-made, the man-caused; extremely severe snow storms or bitterly cold temperatures do not constitute `unnatural' phenomena. * * *"Porter, supra, at 95.
(Emphasis sic.) Bartholic.
 {¶ 13} We first note that the record contains no evidence regarding the source of the ice upon which Kaeppner fell. Describing the general condition of the sidewalk, Kaeppner testified that the sidewalk was wet and icy and that "[t]here was water dripping down from the overhang. It was from the snow on top of it. I think the heat from the rooms was what was causing the snow to melt." (Depo. at 21.) However, nowhere does Kaeppner testify that the ice where he fell resulted from dripping, melted snow. Nor does Kaeppner testify that water was dripping from the overhang onto the sidewalk at the location of his fall. Regardless, assuming that Kaeppner fell on ice caused by melted snow dripping from the overhang and refreezing, the evidence before the trial court failed to demonstrate a genuine issue of material fact as to whether the resultant accumulation was unnatural.
 {¶ 14} In support of his argument that he slipped and fell on an unnatural accumulation of ice, Kaeppner relies on Tyrrell v.Investment Assoc., Inc. (1984), 16 Ohio App.3d 47. In that case, the plaintiff exited a drugstore and fell on a patch of ice on an otherwise clear, dry sidewalk. The plaintiff argued that defects in a flat canopy extending five feet over the sidewalk allowed melting snow and water to drip from the edge of the canopy onto the sidewalk, where it refroze. The plaintiff presented expert evidence about defects in the canopy and evidence that drugstore employees knew about the hazard from the dripping canopy. The Eighth District Court of Appeals recognized that the store's duty of ordinary care "did not extend to protection against hazards from natural accumulations of ice and snow similar to surrounding conditions[,]" but stated that the "plaintiff's evidence described ice formed by nonnatural accumulations in an area which differed markedly from surrounding conditions." Id. at 49. Nevertheless, the court stated that, with respect to an unnatural accumulation of ice, because the drugstore employees did not create the hazard, "the store had no related duty unless its employees knew or should have known about its existence." Id. Based on the drugstore's knowledge of the hazard from the dripping canopy, the court found that a jury could reasonably conclude that the drugstore failed to exercise reasonable care for its customers' safety.
 {¶ 15} Based on Tyrrell, Kaeppner argues that ice that forms on a sidewalk from water dripping from an overhang or canopy constitutes an unnatural accumulation. Contrary to Kaeppner's broad proposition is this court's opinion in Martin.
There, the plaintiff alleged that she slipped on ice that resulted from snow melting and dripping from a gutterless roof onto the sidewalk. Although the plaintiff in Martin, like Kaeppner here, relied on Tyrrell to demonstrate that she fell on an unnatural accumulation of ice, we distinguished Tyrrell.
Unlike the plaintiff in Tyrrell, the plaintiff in Martin did not claim that the roof itself was defective. Nor did she offer evidence of defendant's superior knowledge of the roof's propensities. This court stated that, "[i]n order to prevail, appellant must present evidence that some act of omission or commission on appellee's part rendered the accumulation unforeseeably dangerous to her or unnatural in derivation. The melting of ice and snow and subsequent refreezing is insufficient, standing alone, to impose liability." Martin; see, also, Abercrombie v. Byrne-Hill Co., Ltd., Lucas. App. No. L-05-1010, 2005-Ohio-5249 (distinguishing Tyrrell where there was no evidence that a canopy was defective and no evidence that the property owner created or had knowledge of the hazard). Thus, this court has rejected Kaeppner's theory that ice formed on a sidewalk due to a dripping canopy necessarily constitutes an unnatural accumulation for which a premises owner may be liable.
 {¶ 16} After carefully reviewing Tyrrell, we conclude that it is distinguishable from the present facts. First, the record here contains no evidence of a defect in the overhang. Although Kaeppner's complaint alleged that water dripped through a leak in the overhang, the record contains no evidence of any such defect. The bare allegation of a leak in Kaeppner's complaint, unsupported by any evidence, is insufficient to demonstrate a genuine issue of material fact as to whether the accumulated ice upon which Kaeppner fell was unnatural. Also unlike Tyrrell,
the record here contains no evidence that the place where Kaeppner fell differed from the surrounding conditions. Rather, Kaeppner testified that "there was a lot of snow" around and that the sidewalk was, generally, wet and icy. (Depo. at 16.) Kaeppner was aware of the snowy and icy conditions and their attendant hazards and, accordingly, "stayed [as] close to the building as [he] could" as he walked toward the motel office. (Depo. at 19.) Based on the lack of evidence of a defect in the overhang and the lack of evidence that the spot where Kaeppner fell differed from the surrounding conditions, we distinguish Tyrrell.
 {¶ 17} Kaeppner also contends that, because heat from the motel rooms melted snow on the overhang and caused it to drip onto the sidewalk, the resultant ice was not a natural accumulation. Even assuming the record contained competent evidence that heat from the motel melted the snow on the motel roof, we reject Kaeppner's argument that this fact converts an otherwise natural accumulation of ice and snow into an unnatural accumulation. Snow that melts and later refreezes is a natural accumulation. Abercrombie at ¶ 14, citing Myers v. Forest CityEnt., Inc. (1993), 92 Ohio App.3d 351, 354; Martin.
 {¶ 18} In Lehman v. Cracker Barrel Old Country, Richland App. No. 2004-CV-0048, 2005-Ohio-370, the plaintiff raised an argument similar to Kaeppner's here, maintaining that an intervention in the freeze-thaw process, other than meteorological forces, rendered the accumulation unnatural. InLehman, the plaintiff, who slipped and fell on a restaurant sidewalk the day after a snow and ice storm, argued that the restaurant created an unnatural accumulation of ice by applying salt to the sidewalk and allowing ice to thaw and refreeze, despite the fact that the temperature remained below freezing. The Fifth District Court of Appeals rejected the plaintiff's argument, holding that "the mere fact that Cracker [B]arrel salted the sidewalk and then allowed the sidewalk to freeze again does not turn the natural accumulation of snow and ice into an accumulation that is unnatural." Id. at ¶ 30; see, also,Cunningham v. Thacker Serv., Inc., Franklin App. No. 03AP-455,2003-Ohio-6065, at ¶ 14 ("[s]alting or shoveling does not turn a natural accumulation into an unnatural accumulation"). Similarly, the fact that a warm roof, rather than rising air temperature or salt, caused naturally accumulated snow to melt does not alter the conclusion that the accumulation, of both the snow and the refrozen ice, is natural. Accordingly, we find no evidence from which a trier of fact could conclude that Kaeppner fell on an unnatural accumulation of ice.
 {¶ 19} Even if a genuine issue of material fact existed as to whether the accumulation of ice was unnatural, the evidence fails to demonstrate a genuine issue of material fact as to whether University Inn owed Kaeppner a duty with respect thereto. To prevail in a slip-and-fall negligence claim involving an unnatural accumulation of ice and snow, the plaintiff must submit evidence that the defendant was actively negligent in permitting and/or creating the unnatural accumulation. Lawrence v. JiffyPrint, Inc., Trumbull App. No. 2004-T-0065, 2005-Ohio-4043, at ¶27; Sasse; Martin ("[a]ppellant must show that appellee committed some act of negligence or exhibited greater knowledge"). As the Tyrrell court stated, where a defendant did not create the unnatural accumulation, the defendant has "no related duty unless its employees knew or should have known about [the hazard's] existence." Tyrrell at 49.
 {¶ 20} Here, Kaeppner points to no specific evidence that University Inn created or was actively negligent in permitting the allegedly unnatural accumulation of ice to remain on its premises. The record contains no evidence to suggest that University Inn's salting of the sidewalk at some unknown time prior to Kaeppner's fall created or aggravated the hazard posed by the ice. Nor does the record contain any evidence that University Inn or any of its employees knew or should have known of a hazard from the allegedly leaking canopy. The only evidence before the trial court consisted of Kaeppner's deposition testimony and the affidavit of University Inn's expert, neither of which provides evidence that University Inn was aware of or should have been aware of any hazard resulting from water dripping from the canopy. Simply, no evidence was submitted to the trial court from which a jury could infer negligence.
 {¶ 21} Next, Kaeppner argues that genuine issues of material fact remain as to whether the ice upon which he fell was an open and obvious hazard. Specifically, Kaeppner argues that, because the sidewalk carpet was not a solid color and because the walkway was covered with spots of water, ice, and salt, a reasonable jury could conclude that the ice on which he fell was not open and obvious and, therefore, that University Inn owed Kaeppner a duty with respect thereto. We disagree. The Supreme Court of Ohio has held that "[t]he dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them." Sidle at paragraph two of the syllabus. Even if the specific patch of ice where Kaeppner fell was not openly visible, Kaeppner was undisputedly aware of the surrounding snow and that the sidewalk was, generally, wet and icy, with spots of water, ice, and salt. The condition of the sidewalk presented an obvious danger that Kaeppner could have reasonably guarded against. SeeSimpson v. Concord United Methodist Church, Montgomery App. No. 20382, 2005-Ohio-4534. The color of the carpet did not prevent Kaeppner from appreciating the hazard posed by the wet and icy sidewalk. Accordingly, the trial court did not err in failing to find a genuine issue of material fact as to whether the ice upon which Kaeppner fell constituted an open and obvious hazard.
 {¶ 22} Finally, Kaeppner argues that the trial court erred by failing to consider Ohio law regarding a property owner's duty to provide a business invitee reasonable means of ingress and egress. Based on Mizenis v. Sands Motel, Inc. (1975),50 Ohio App.2d 226, Kaeppner argues that summary judgment was inappropriate because the trial court was bound to conclude that University Inn's duty of ordinary care extended to the ice upon which Kaeppner fell and that genuine issues of material fact remained as to whether University Inn breached that duty.
 {¶ 23} In Mizenis, a motel guest sued the motel operator for injuries he sustained after slipping on ice and falling while descending an exterior stairway from his second-floor motel room. The only means of ingress and egress to the plaintiff's motel room were two exterior metal stairways at opposite ends of the motel, both of which were slippery as the result of a natural accumulation of ice and snow. The stairways had been in the same condition for three or more days prior to the motel assigning the plaintiff his second-floor room. Upon becoming aware of the dangerous condition of the stairs when he first ascended to his room, the plaintiff immediately notified the motel, complained of the dangerous condition, and asked that it be remedied. The following morning, after carefully descending the slippery stairs, the plaintiff again complained to the motel clerk of the condition of the stairs. On his fifth trip on the stairs, the plaintiff fell. The Mizenis trial court granted summary judgment in favor of the motel operator, implicitly finding that the motel owed no duty to the plaintiff concerning the ice and snow on the exterior stairways and/or that the plaintiff voluntarily assumed the risk of the icy and snowy condition. The plaintiff appealed.
 {¶ 24} The Sixth District Court of Appeals began by setting forth legal propositions relating to premises liability for natural accumulations of ice and snow, drawn from the Ohio Supreme Court's opinions in Debie and Sidle:
1. Where the owner or occupier of business premises is not shown to have notice, actual or implied, that the natural accumulation of snow and ice on his premises has created there a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area, there is a failure of proof of actionable negligence.
2. The mere fact standing alone that the owner or occupier has failed to remove natural accumulations of snow and ice from private walks on his business premises for an unreasonable time does not give rise to an action by a business invitee who claims damages for injuries occasioned by a fall thereon.
3. An occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himselfagainst them.
4. The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them,
and such occupier has no duty to his business invitee to remove natural accumulations of snow and ice from private walks and steps of his premises.
(Emphasis sic.) Id. at 228-229.
 {¶ 25} The Sixth District distinguished the factual situation in Mizenis from Debie and Sidle:
* * * In the present case, unlike Debie and Sidle,
defendants did have actual notice that the ice and snow on the stairway created a condition substantially more dangerous to plaintiff than plaintiff should have anticipated by reason of his knowledge of conditions prevailing generally. * * *
Id. at 229. In so stating, the court correctly identified an exception to the no-duty rule. Thus, based on evidence that the defendant had actual knowledge that the ice and snow on the exterior stairways created a condition substantially more dangerous to the plaintiff than he should have anticipated based on his knowledge of the surrounding conditions, the court concluded that the defendant's duty to the plaintiff extended to the natural accumulation of ice and snow on the stairway. The court also stated that a motel guest does not assume the risk of a motel's negligence in maintaining a common passageway when it is the only exit from the premises.
 {¶ 26} Ohio courts, including this court, have distinguishedMizenis from cases in which the defendant lacked actual notice of the allegedly hazardous condition. In Jackson v. HolidayInns, Inc. (Feb. 9, 1982), Franklin App. No. 80AP-914, the plaintiff, a guest in the defendant's motel, fell on an icy sidewalk. The plaintiff, who undisputedly had to traverse an icy path in order to travel from his automobile to his motel room, argued that Mizenis required a finding of duty on the part of the defendant. This court stated:
Mizenis is distinguishable * * * there is no evidence of a known hazard herein involved, there being no evidence such as that in Mizenis, that a dangerous condition had existed for three days consisting of slippery and dangerous exterior stairways. Rather, there was testimony that defendant's employees were unaware of the condition of the sidewalk in question, and plaintiff John Jackson admitted that he did not know how the ice on which he slipped got on the sidewalk or how long it had been there. * * *
 {¶ 27} Other Ohio appellate districts have similarly distinguished Mizenis. In Simpson, the Second District Court of Appeals reviewed a scenario where the plaintiff fell on a patch of black ice in a church parking lot after delivering her son to preschool. Rejecting the plaintiff's reliance onMizenis, the court stated:
There is no evidence that [the defendant] had actual knowledge of the patch of black ice on which [the plaintiff] slipped and fell, or that the route she had to take necessarily required her to step across it. Therefore, the holding in Mizenis, which was driven by circumstances of that kind, does not apply to vary the role of Sidle v. Humphrey and the other cases which follow it that determine [the defendant's] liability on [the plaintiff's] claim for relief.
Simpson at ¶ 29. See, also, Lewis v. Meinke Marina West
(July 22, 1994), Ottawa App. No. 93OT066 (rejecting reliance onMizenis to create duty where plaintiff had not given prior notice of danger posed by boat dock).
 {¶ 28} Upon review, we are persuaded by the distinguishing analysis set forth in Jackson and Simpson, applying the no-duty rule to fact patterns analogous to that presently before this court. Here, there is no evidence that Kaeppner gave University Inn notice of the danger posed by ice upon the sidewalk, and the mere presence of salt on the sidewalk does not raise an inference that University Inn had actual or implied knowledge of the patch of ice upon which Kaeppner fell. Therefore, the evidence reveals no facts to take this case outside the general rule espoused by Debie and Sidle.
 {¶ 29} The Mizenis court also stated that the plaintiff could not have reasonably been expected to protect himself from the danger of the icy and snowy stairway because it was the only means of ingress and egress to his motel room. Therefore, the court stated that reasonable minds should determine whether the plaintiff should have protected himself in some other way. InMizenis, the plaintiff could neither reach his motel room nor return to the ground level without encountering the danger of the icy and snowy stairway. Kaeppner argues that ice similarly impeded his sole means of egress and ingress.
 {¶ 30} Upon review, we conclude that the ice upon which Kaeppner fell did not block the sole means of ingress and egress to his room. The sidewalk running along the University Inn was nearly eight feet wide and had multiple paths of access into the parking lot. Before he fell, Kaeppner traveled approximately 100 yards from his room and, in fact, had passed the motel front office. The accumulation of ice upon which Kaeppner fell did not prevent Kaeppner from leaving his room, accessing his car, or accessing the motel office. Thus, unlike in Mizenis, it cannot be said that Kaeppner's sole means of ingress and egress required him to encounter the natural accumulation of ice upon which he fell. See Simpson. For this additional reason, we findMizenis distinguishable.
 {¶ 31} Upon review, we conclude that the trial court did not err in determining that University Inn owed Kaeppner no duty with respect to the natural accumulation of ice upon which he fell. Accordingly, University Inn was entitled to judgment as a matter of law, and the trial court did not err in granting its motion for summary judgment. For the aforestated reasons, we overrule Kaeppner's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and McGrath, JJ., concur.