[Cite as *Miller v. Grewal Bros. Corp.*, 2012-Ohio-1279.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### HENRY COUNTY

JAMES D. MILLER,

    PLAINTIFF-APPELLANT,          CASE NO.  7-11-12

    v.

GREWAL BROS. CORP., dba         O P I N I O N
BEST WESTERN NAPOLEON INN,

    DEFENDANT-APPELLEE.

Appeal from Henry County Common Pleas Court
Trial Court No. 10 CIV 0145

**Judgment Affirmed**

Date of Decision:    March 26, 2012

APPEARANCES:

    *George C. Rogers*  for Appellant

    *Edward T. Mohler*  for Appellee

**ROGERS, J.**

{¶1} Plaintiff-Appellant, James Miller, appeals the judgment of the Court of Common Pleas of Henry County granting Defendant-Appellee, Grewal Brothers Corporation ("Grewal"), summary judgment. On appeal, Miller contends that the trial court erred in granting Grewal summary judgment based on the assumption that a non-obvious patch of ice underneath a canopy was a natural accumulation, and that the trial court erred in failing to grant him summary judgment on the issue of liability. Based on the following, we affirm the judgment of the trial court.

{¶2} On January 30, 2009, Miller and three friends, Matthew Morris, Jeffrey Darstein, and Robert Fromm, drove to Napoleon, Ohio for a billiards tournament. Miller Depo. Tr., pp. 8-9. The weather that day was cold with intermittent flurries. *Id*. at pp. 14-15; Darstein Depo. Tr., pp. 16-17. After the billiards tournament ended for the day, Morris drove Miller, Darstein, and Fromm to the Best Western Napoleon Inn ("Hotel"), where they had reserved rooms for the night. Morris Affidavit, p. 1. Darstein testified that it snowed during the drive to the Hotel. Darstein Depo. Tr., p. 17. Miller and his friends arrived at the Hotel at approximately 10:16 p.m. Upon arriving at the Hotel, Morris testified that there was ice and snow on the ground. Morris Affidavit, p. 1. As a result, Morris parked his vehicle underneath the Hotel's canopy, which was attached to the

Hotel's main entrance. *Id.* Morris, Miller, and Darstein each testified that the area underneath the canopy appeared to be clear of ice and snow. *Id.*; Miller Depo. Tr., p. 14; Darstein Affidavit, p. 2. Upon arrival, Miller, without issue, entered the Hotel's lobby to check-in. Miller Depo. Tr., p. 16. After checking in, Miller returned to the rear of Morris' vehicle, which remained parked underneath the Hotel's canopy, to collect his luggage. *Id.* As Miller collected his luggage he slipped and fell to the ground, fracturing his left fibula. *Id.* at pp. 12, 16. Morris testified that as Miller lay on the ground he observed ice "all around." Morris Depo. Tr., p. 20. Miller's friends brought him into the Hotel's lobby. Miller Depo. Tr., p. 17. At that time, the Hotel's front desk clerk, Angie Carroll, called the night manager, Balraj Grewal ("Balraj"), and informed him of the accident. Balraj Depo. Tr., p. 7. Carroll then checked the area underneath the canopy but did not find any ice. Carroll Affidavit, p. 2. As Miller waited to be transported to the hospital, he had a conversation with Carroll. Miller Depo. Tr., p. 18. According to Miller, Carroll mentioned that "it was slick out there and that somebody should put salt down but nobody had got to it at that point." *Id.* Similarly, Morris testified that Carroll mentioned that she "previously told her boss that it was icy and the entry needed to be salted but they [had not] gotten to it." Morris Affidavit, p. 2; s*ee also* Darstein Affidavit, p. 1. Shortly after Miller was taken to the hospital, Balraj arrived at the Hotel. Balraj Depo. Tr., p. 10.

Balraj testified that he did not find any ice underneath the canopy and, at approximately 11:00 p.m., took several pictures of the area underneath the canopy. *Id.*; Defendant's Exhibits A-D. As Balraj was taking pictures the president of Grewal, Jagdev Grewal ("Jagdev"), arrived at the Hotel. Jagdev Depo. Tr., p. 15. Upon arrival, Jagdev inspected the area underneath the canopy but did not observe any ice or snow. *Id.*

{¶3} In July 2010, Miller filed a complaint against Grewal, because it operated the Hotel. In his complaint, Miller alleged that Grewal negligently failed to correct a known hazard, i.e. a patch of ice, which caused him to fall and suffer damages.[1]

{¶4} In August 2010, Grewal answered Miller's complaint, denying the allegations therein and asserting, among other defenses, that he assumed the risk and/or was contributorily negligent, and that any accumulation of ice or snow on the Hotel's premises was natural.

{¶5} In June 2011, Grewal moved for summary judgment. Grewal argued that it owed no duty to Miller, and thus cannot be liable for his damages, since any ice or snow underneath the canopy on the night of his accident accumulated naturally, and it did not have superior knowledge of any ice or snow underneath the canopy.

---

[1] We note that Miller's complaint also names his wife, Sherry Miller, as a plaintiff. We, however, will not consider any claims as they relate to Sherry, because she did not file a separate notice of appeal, nor was she included in Miller's notice of appeal.

{¶6} On July 8, 2011, Miller filed a memorandum in opposition to Grewal's motion for summary judgment and moved for partial summary judgment on the issue of Grewal's liability. In response to Grewal's motion for summary judgment, Miller argued that genuine issues of material fact existed as to whether the ice that caused his fall was an unnatural accumulation; whether the ice was an open and obvious hazard; and, whether Grewal had superior knowledge of the ice.

{¶7} On July 15, 2011, Grewal filed a memorandum in response to Miller's memorandum in opposition.

{¶8} Later that month, the trial court granted summary judgment in favor of Grewal. In doing so, the trial court found that nothing in the record indicates that Miller slipped on anything other than a natural accumulation of ice; and, that Miller was aware of the prevailing wintry conditions, thus placing him on notice of the possibility of ice near the Hotel's main entrance. Accordingly, the trial court held that Grewal owed no duty to Miller and, thus, could not be liable as a matter of law.

{¶9} It is from this judgment Miller appeals, presenting the following assignments of error for our review.

***Assignment of Error No. I***

**THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, BASED UPON THE ASSUMPTION THAT THE NON-OBVIOUS PATCH OF ICE THAT WAS CREATED IN THE ENTRY AREA**

**UNDERNEATH THE PORTICO CONSTRUCTED BY THE DEFENDANT, WAS A NATURAL ACCUMULATION OF ICE AND SNOW.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN FAILING TO SUA SPONTE ENTER SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY AS REQUESTED BY PLAINTIFF.**

*Assignment of Error No. I*

{¶10} In his first assignment of error, Miller contends that the trial court erred in determining that the ice that caused his fall was a natural accumulation. Specifically, Miller contends that there is a genuine issue of material fact as to whether the ice that caused his fall was a natural or unnatural accumulation. In the alternative, Miller contends that even if the ice that caused his fall was a natural accumulation there is a genuine issue of material fact as to whether Grewal had superior knowledge of the ice, thus imputing upon Grewal a duty to remove the ice or warn him of the same. Based on the following, we disagree.

{¶11} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.),

citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id*. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶12} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his or her argument. *Id*. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he or she may not rest on the mere allegations or denials of his or her pleadings. *Id*. at 293; Civ.R. 56(E).

**{¶13}** Bearing these standards in mind, we turn our attention to Miller's negligence claim. To establish a cause of action for negligence, a plaintiff must show the existence of a duty, breach of that duty, and an injury proximately caused by the breach. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680 (1998). To defeat a properly supported motion for summary judgment in a negligence action, the plaintiff must first demonstrate a duty owed him by the defendant. *Kaeppner v. Leading Mgt., Inc.*, 10th Dist. No. 05AP-1324, 2006-Ohio-3588, ¶ 9. The plaintiff must then present evidence from which reasonable minds could conclude that the defendant breached that duty and that the breach was the proximate cause of the plaintiff's injuries. *Id.*

**{¶14}** An owner or occupier of land owes business invitees, such as Miller, a duty of ordinary care in maintaining the property in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). However, the Supreme Court of Ohio has consistently held that an owner or occupier's duty of ordinary care does not extend to natural accumulations of ice and snow. *Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St.2d 38 (1967); *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968); *Brinkman v. Ross*, 68 Ohio St.3d 82 (1993). "[I]t is well established that an owner or occupier of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the private

sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow." *Brinkman* at 83. In so holding, the Supreme Court explained that, "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow." *Brinkman* at 84.

{¶15} Ohio courts have recognized two exceptions to the general rule that an owner or occupier of land owes no duty to business invitees regarding natural accumulations of ice and snow, both of which Miller contends are applicable here. First, a plaintiff may establish negligence where an owner or occupier is actively negligent in permitting or creating an unnatural accumulation of ice and snow. *Lapatkovich v. City of Tiffin*, 28 Ohio St.3d 204, 207 (1986). Second, a plaintiff may establish negligence where an owner or occupier of property is shown to have actual or implied notice that a natural accumulation of ice or snow on his or her property has created a condition substantially more dangerous than a business invitee should have anticipated by reason of knowledge of conditions generally prevailing in the area. *Debie* at paragraph one of the syllabus. To survive a properly supported motion for summary judgment in this type of case, the plaintiff must produce evidence to establish either that: (1) the landowner was actively negligent in permitting an unnatural accumulation of ice and snow to exist upon

their land; or (2) the natural accumulation of ice was substantially more dangerous than the plaintiff could have anticipated and that the landowner had notice of such danger. *Cooper v. Valvoline Instant Oil Change*, 10th Dist. No. 07AP-392, 2007-Ohio-5930, ¶ 17.

{¶16} With respect to the first exception, Miller contends that there is a genuine issue of material fact as to whether the ice which caused his fall was a natural or unnatural accumulation. We disagree as a reasonable trier of fact, viewing the evidence in the light most favorable to Miller, could not conclude that the accumulation of ice upon which Miller fell was unnatural.

{¶17} "[A] natural accumulation of ice and snow is one which accumulates as a result of an act of nature, whereas an unnatural accumulation is one that results from an act of a person." *Coletta v. Univ. of Akron*, 49 Ohio App.3d 35, 37 (10th Dist. 1988). "'Unnatural' accumulation must refer to causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow, i.e., to causes other than the meteorological forces of nature. By definition, then, the 'unnatural' is the man-made, the man-caused * * *." *Porter v. Miller*, 13 Ohio App.3d 93, 95 (6th Dist. 1983).

{¶18} Cases where courts have found genuine issues of material fact regarding whether an accumulation of ice and snow was natural or unnatural generally involve records containing evidence of an unnatural cause or source of

the accumulation. *See Tyrrell v. Invest. Assoc., Inc.*, 16 Ohio App.3d 47 (8th Dist. 1984) (defect in canopy extending over sidewalk); *Sherwood v. Mentor Corners Ltd. Partnership*, 11th Dist. No. 2006-L-020, 2006-Ohio-6865 (valley between gable and edge of roof); *Nawal v. Clearview Inn, Inc.*, 8th Dist. No. 65796 (Aug. 4, 1994) (improperly maintained downspouts and gutters). Courts have also denied summary judgment where there is evidence that an accumulation of ice results from some source other than precipitation or meteorological conditions. *See Notman v. AM/PM, Inc.*, 11th Dist. No. 2002-T-0144, 2004-Ohio-344 (ice resulted from water from carwash hoses).

{¶19} Here, the evidence reveals that the weather was cold and snowy on the day of Miller's accident; that it snowed during the drive from the billiards tournament to the Hotel; and, that the area underneath the canopy was open to the elements on three of its four sides. Likewise, there is no evidence that the construction of the canopy resulted in an unnatural accumulation of ice; that there was a defect in the canopy that caused an unnatural accumulation of ice; or, that ice resulted from something other than precipitation or the prevailing meteorological conditions. Despite the lack of such evidence, Miller, nevertheless, contends there is a genuine issue of material fact based on the fact that reasonable minds could infer that the ice that caused his fall was an unnatural accumulation because canopies are intended to protect the area underneath them

from the natural accumulation of ice and snow. While the nonmoving party to a summary judgment motion is entitled to all reasonable inferences, an inference can only be made and relied on if it is drawn from evidence in the record. *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 332-33 (1955). Here, Miller cites nothing in the record that supports his inference or otherwise demonstrates that the ice at issue was an unnatural accumulation. Absent such evidence, we find that Miller's asserted inference does not create a genuine issue of material fact as to whether the ice at issue was a natural or unnatural accumulation. *See Norton v. Marion Gen. Hosp.*, 3d Dist. No. 9-06-04, 2006-Ohio-3535, ¶ 11 (a potential inference is not enough to withstand a motion for summary judgment).

{¶20} With respect to the second exception, Miller contends that there is a genuine issue of material fact as to whether Grewal had superior knowledge that the ice at issue was substantially more dangerous than he should have anticipated. We disagree as a reasonable trier of fact, viewing the evidence in the light most favorable to Miller, could not conclude that Grewal had superior knowledge of the ice that caused his fall.

{¶21} In order to be liable under this exception, the owner or occupier must have some superior knowledge of the existing danger. *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210 (1986). Here, Miller relies on Carroll's statement concerning

the icy nature of the entry area and the fact that the Hotel had salt available for its premises as evidence of Grewal's superior knowledge of the ice at issue.

{¶22} First, the fact that the Hotel had salt available does not demonstrate that Grewal had any knowledge of the ice that caused Miller's fall. Miller simply assumes, without support, that since the Hotel had salt available for its premises Grewal had superior knowledge of the ice at issue. At most, evidence that a business has salt available for its premises demonstrates that it is *generally* aware of the hazards associated with the accumulation of ice and snow, as opposed to specific knowledge of a particular icy condition. Accordingly, the fact that the Hotel had salt available for its premises has no relevance in determining whether there is a genuine issue of material fact as to whether Grewal had superior knowledge of the ice at issue.

{¶23} As for Carroll's statement concerning her awareness of the ice in the entry area, we find that her statement does not create a genuine issue of material fact as to whether Grewal had superior knowledge of the ice at issue.[2] "To the extent that a business invitee and the owner of the premises have equal knowledge of the usual dangers resulting solely from natural accumulations of ice and snow, the latter cannot be charged with actionable negligence with regard to such dangers." *Mikula v. Slavin Tailors*, 24 Ohio St.2d 48, 56 (1970). While the area

---

[2] Though there is no evidence that Carroll stated that the area beneath the canopy was icy, we will construe her statement that the entry area was icy as encompassing the area beneath the canopy since the Hotel's canopy is attached to the Hotel's main entrance.

underneath the canopy appeared clear of ice and snow, Miller was, based on his awareness of the prevailing wintry conditions, charged with knowledge of the dangers presented by natural accumulations of ice and snow as a matter of law. As the Second District Court of Appeals explained:

> [I]t is assumed that reasonable individuals will understand that winter conditions can create dangers from ice and snow, and individuals will take the necessary precautions. It is not that patches of ice and snow are obvious. Many are not. It is that, as a general matter, the potential for dangerous conditions in winter is obvious. Dangers from natural accumulations of ice and snow are, therefore, generically treated by the law as open and obvious.

*Community Ins. Co. v. McDonald's Restaurants of Ohio, Inc*., 2d Dist. Nos. 17051, 17053 (Dec. 11, 1998). Therefore, even though Grewal, via Carroll, knew of the hazardous condition created by the natural accumulation of ice underneath its canopy, so, too, as a matter of law, did Miller. *See Id.* Moreover, Miller's imputed knowledge of the hazardous conditions associated with winter is not reduced or superseded by the fact that his fall occurred underneath the Hotel's canopy. The canopy was open to the elements on three sides, thus plainly rendering the area underneath the canopy susceptible to the prevailing wintry conditions and the hazards associated with such conditions. Consequently, the evidence demonstrates that the parties had equal knowledge of the dangers resulting from the natural accumulation of ice and snow. As such, Grewal owed Miller no duty to remove the ice or warn him of the same.

-14-

{¶24} In light of the foregoing, we find that the trial court did not err in granting Grewal summary judgment. Accordingly, we overrule Miller's first assignment of error.

*Assignment of Error No. II*

{¶25} In his second assignment of error, Miller contends that the trial court erred in denying him partial summary judgment on the issue of Grewal's liability. In light of our finding that Grewal was entitled to summary judgment, Miller's second assignment of error is moot and we decline to address it. App.R. 12(A)(1)(c).

{¶26} Having found no error prejudicial to Miller herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**