[Cite as *King v. E. Worthington Village*, 2013-Ohio-4160.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Maureen King, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 13AP-324 |
| v. | : | (C.P.C. No. 12CVC-04-4854) |
| East Worthington Village et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 24, 2013

*Arthur C. Graves*, for appellant.

*Kevin P. Foley*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶1} Plaintiff-appellant, Maureen King ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas granting defendants-appellees, East Worthington Village, East Worthington Village, L.L.C., and Elite Management Holding, L.L.C. ("East Village"), motion for summary judgment.

I. FACTS AND PROCEDURAL HISTORY

{¶2} Appellant slipped and fell on an accumulation of ice and snow on the concrete sidewalk in front of her apartment building, which is owned and operated by East Village. The undisputed facts reveal that on February 1, 2011, appellant left her apartment at approximately 9:00 a.m. to retrieve some items from her car. Appellant exited the building and took a step or two on the concrete slab outside the exit door.

Just as appellant stepped down onto the sidewalk, she slipped and fell on ice suffering a fracture to her left wrist as well as injuries to other areas of her body.

{¶3} On April 17, 2012, appellant filed her complaint against East Village alleging negligence. On January 22, 2013, the trial court granted summary judgment in favor of East Village.

## II. ASSIGNMENT OF ERROR

{¶4} Appellant has timely appealed to this court, asserting the following assignment of error:

> The trial court erred in sustaining the Motion for Summary Judgment filed on behalf of the Defendant East Worthington Village.

## III. STANDARD OF REVIEW

{¶5} Appellate review of summary judgment motion is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶6} Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶7} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of

the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. *Id*. Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id*. If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id*.

## IV.  SUBSTANTIVE LAW

{¶8}   To establish a cause of action for negligence, plaintiff is required to show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury resulting proximately therefrom. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984), citing *Di Gildo v. Caponi*, 18 Ohio St.2d 125 (1969); *Feldman v. Howard*, 10 Ohio St.2d 189 (1967). A trial court properly grants a motion for summary judgment "[w]hen the defendants, as the moving parties, furnish evidence which demonstrates the plaintiff has not established the elements necessary to maintain [a] negligence action." *Feichtner v. Cleveland*, 95 Ohio App.3d 388, 394 (8th Dist.1994), citing *Keister v. Park Centre Lanes*, 3 Ohio App.3d 19 (5th Dist.1981).

{¶9}   "Whether a duty exists is a question of law for the court to determine." *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). A defendant's duty of care is determined by the relationship between the plaintiff and defendant and the foreseeability of injury. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642 (1992). An owner or occupier owes an invitee the duty of ordinary care in maintaining the premises in a reasonably safe condition so that she is not unnecessarily and unreasonably exposed to danger. *See Cordle v. Bravo Dev., Inc.*, 10th Dist. No. 06AP-256, 2006-Ohio-5693, ¶ 9.

{¶10}  However, when injuries are caused by natural accumulations of ice and snow, Ohio law provides that an owner or occupier owes no duty either to remove such accumulations or warn users of the dangers associated therewith. *Thatcher v. Lauffer Ravines, L.L.C.,* 10th Dist. No. 11AP-851, 2012-Ohio-6193, ¶ 15. A natural accumulation

of ice or snow is that which is formed solely as a result of meteorological forces such as rain, snow, or a thawing and re-freezing cycle. *Id.* *See also Bailey v. St. Vincent DePaul Church*, 8th Dist. No. 71629 (May 8, 1997), citing *Hoenigman v. McDonald's Corp.*, 8th Dist. No. 56010 (Jan. 11, 1990) ("the freeze and thaw cycle * * * remains a natural accumulation").

{¶11} We have referred to this rule of law as the "no-duty rule." *Ervin v. Case Bowen Co.*, 10th Dist. No. 07AP-322, 2008-Ohio-393. "The rationale is that individuals are assumed to appreciate the inherent risks associated with ice and snow arising during typical Ohio winters and protect themselves against such dangers." *Thatcher* at ¶ 15, citing *Brinkman v. Ross*, 68 Ohio St.3d 82, 83-84 (1993). Accordingly, with respect to a slip and fall on ice or snow, "the threshold question is whether the accumulation of ice is natural." *Lawrence v. Jiffy Print, Inc.*, 11th Dist. No. 2004-T-0065, 2005-Ohio-4043, ¶ 12.

{¶12} In *Kaeppner v. Leading Mgt.*, 10th Dist. No. 05AP-1324, 2006-Ohio-3588, ¶ 11, we stated that "[t]o survive a properly supported motion for summary judgment in this type of case, the plaintiff must produce evidence to establish either that: (1) the natural accumulation of ice and snow was substantially more dangerous than the plaintiff could have anticipated and that the land owner had notice of such danger; or (2) that the land owner was actively negligent in permitting an unnatural accumulation of ice and snow to exist." *Id.*, citing *Sasse v. Mahle*, 11th Dist. No. 98-L-157 (Nov. 19, 1999); *Martin v. Hook SuperX, Inc.*, 10th Dist. No. 92AP-1649 (Mar. 18, 1993).

## V. LEGAL ANALYSIS

{¶13} The trial court, relying on our opinion in *Kaeppner*, concluded that the "no-duty rule" applied to this case inasmuch as the only reasonable conclusion to be drawn from the evidence *was* that appellant slipped and fell on a natural accumulation of ice, and that none of the recognized exceptions to the no-duty rule applied.

{¶14} When construed in appellant's favor, the evidence establishes the following: the outside temperature was below freezing on the day in question; freezing rain had fallen overnight; the accumulation of ice upon which appellant slipped and fell was not there the previous day when appellant arrived at home; appellant did not see the ice before she

slipped and fell; appellant observed the ice only after she lay on the concrete sidewalk after her fall; no salt or deicing agent had been applied by East Village on the morning of appellant's fall; and the ice was located in the vicinity of a downspout leading from the gutters.

{¶15} Appellant relies upon the following excerpts from her deposition:

Q. So had you been looking for ice before you stepped onto it, you would have seen it?

A. No. I didn't see it until - - I mean, my face was right down on it. Of course, I'm going to see with my face right on it. I was laying there on the pavement, on the sidewalk, and you can see it.

(Appellant's deposition, 42.)

Q. Would you agree with me that it's smart before you walk out in the winter in Columbus - - before you walk out, to make sure that there's no ice or snow on the ground?

A. I didn't see any, but apparently it was there. But they always salt, and they hadn't salted. Then when I went and asked why they hadn't salted after I had been to the hospital and all, she just told me, well, I guess we just didn't get to it.

(Appellant's deposition, 37.)

Q. So Exhibit C doesn't show where you actually fell then, does it? It shows the area leading up to it, but not where you fell?

A. Yeah. Because you take - - you know, the ice - - when I hit the ice on the first step, you know, after I took that first step down, then right out here would be about the second step, and that's when I went down was about - - .

(Appellant's deposition, 34.)

{¶16} Appellant argues that her testimony gives rise to a factual issue whether the hazard was open and obvious. We disagree.

{¶17} Appellant had lived in Ohio for approximately seven years prior to her fall and she was aware of the winter weather conditions. (Appellant's deposition, 28-29.) Appellant agreed that she needed to be cautious when she exited the building.

(Appellant's deposition, 40.)   Based upon appellant's deposition testimony, the only reasonable inference to draw is that appellant slipped and fell on a natural accumulation of ice that was both open and obvious.  The fact that appellant did not see the ice before she stepped off the stoop does not create an issue of fact.  *See Hall v. Circle K,* 10th Dist. No. 12AP-900, 2013-Ohio-3793, ¶ 21.

{¶18}  Appellant claims, however, that an issue of fact exists whether East Village was negligent in failing to apply salt to the sidewalk as was their custom and practice.  In other words, appellant asks us to impose a greater duty upon East Village to treat or remove a natural accumulation of ice based upon its past practices. However, in *Thatcher*, we stated that "imposing a duty on landlords to remove ice and snow through an 'implied course of conduct' theory would discourage landlords from ever attempting to remove ice and snow from the common areas of their premises as a courtesy to their tenants, and would, therefore, make those areas less safe."  *Id.* at ¶ 40, quoting *Pacey v. Penn Garden Apts.*, 2d Dist. No. 17370 (Feb. 19, 1999).  We see no reason in this case to depart from this sound public policy.  Even appellant conceded that it was almost impossible for East Village to salt every accumulation of ice as soon as it formed.  (Appellant's deposition, 40.)

{¶19}  Based upon the foregoing, the only reasonable conclusion to be drawn from the evidence is that appellant slipped and fell on a natural accumulation of ice, and that East Village owed appellant no duty to either remove the ice or warn her of the danger. Nevertheless, appellant relies upon the case law which holds that an unnatural accumulation of ice may be the result of human action which causes ice and snow to accumulate in unexpected places and ways.  *See, e.g., Sleeper v. Casto Mgt. Servs.*, 10th Dist. No. 12AP-566, 2013-Ohio-3336, ¶ 34 (viewing the evidence in a light most favorable to plaintiffs, we can only find that the ice in the parking lot resulted from a leak in the gutter, and was accordingly an unnatural accumulation of ice); *Porter v. Miller,* 13 Ohio App.3d 93 (6th Dist.1983); *Lawrence* at ¶ 15-16; *Notman v. AM/PM, Inc.,* 11th Dist. No. 2002-T-0144, 2004-Ohio-344, ¶ 24.

{¶20}  In an effort to establish this exception to the "no-duty rule," appellant submitted her own affidavit, wherein she avers:

> It is my opinion that the snow and Ice that caused me to fall was not a natural accumulation of snow and ice, but rather an

unnatural accumulation of snow and ice created by the gutter as shown in Defendants Exhibit B. The ice which caused me to fall formed through the night and morning of my fall. The ice was not there the day before I fell as I had been out of the apartment the day before and did not see any ice.

In preparation for this affidavit I have reviewed the online weather report for the general vicinity of my apartment which reveals that "light freezing rain" was observed hourly from 12:30 a.m. on February 1, 2011 though 9:00 a.m. the time of my fall (Plaintiff's Exhibit 12). It is my opinion that this " light freezing rain" observed hourly fell on the roof of my apartment and was directed to the area of my fall by the downspouts and gutters shown in Defendant's Deposition Exhibit B.

(Appellant's Affidavit, 2-3.)

{¶21} Appellant contends that her affidavit creates an issue of fact that prevents summary judgment in East Village's favor. Specifically, appellant contends that the building gutters and downspouts directed rain water onto an area frequented by tenants, and that evidence permits the inference that East Village was actively negligent in creating an unnatural accumulation of ice. East Village counters that appellant cannot use her own affidavit to create an issue of fact inasmuch as her averments regarding the origin of the ice are inconsistent with her sworn deposition testimony.

{¶22} Appellant testified as follows:

Q. I'm going to show you Exhibit D. It shows a downspout next to your door.

And thereupon, King Exhibit E was marked for purposes of identification.

Q. Exhibit E actually shows the door and the downspout. Can you see both of those?

A. Yes.

Q. Would you agree with me you don't know if the water in front of your door came from that downspout?

A. I don't know where it came from.

Q. Okay. So is it fair to say that you don't know whether this - - the downspout showed in Exhibit D - - actually in Exhibits C, D and E, played any role in your slip and fall on February 1, 2011?

A. I didn't check the downspouts. I didn't even know what a downspout was, so I did not have any idea whether it contributed to it or not.

Q. Okay. And would you also agree with me that the downspout next to your door shown on Exhibits C, D and E, that you don't know if the water came from that downspout - - the ice in front of your doorway - - I'm sorry - - is that correct?

A. That's correct.

(Appellant's deposition, 38-39.)

{¶23} "[A]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment." *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 28. Appellant's averment that the ice upon which she slipped and fell was created by the freezing of rain water directed to the area by downspouts and gutters is inconsistent with appellant's earlier testimony that she did not know where the ice came from. Appellant's failure to provide a sufficient explanation for the inconsistency means that she cannot rely upon her affidavit to create a genuine issue of material fact. *Id.*

{¶24} However, even if we were to consider appellant's affidavit, construction defects do not generally fall within the expertise of laypersons. *Holbrook v. Kingsgate Condominium Assn.*, 12th Dist. No. CA2009-07-193, 2010-Ohio-850, ¶ 20, citing *Notman* at ¶ 26. Thus, appellant's competence to offer opinion testimony regarding the design and/or construction of a rainwater drainage system at East Village is not demonstrated in the record. *Id., citing Notman* at ¶ 24 ("A contention that an unnatural accumulation of snow or ice resulted from a construction defect must usually be accompanied by expert testimony").

{¶25} The undisputed photographic and testimonial evidence shows that the gutters and downspouts directed rain water from the roof to various locations around the building. Defendant's exhibit D shows that a downspout in the area where appellant fell directs rain water onto the patch of ground between the building and the sidewalk. Appellant presented no evidence that East Village was aware either that there was a defect in the gutters and downspouts, that there had been a prior slip and fall incident caused by an alleged accumulation of ice on this particular portion of the sidewalk, or that there were any complaints of an unnatural accumulation of ice in the area on the morning that appellant fell.

{¶26} Appellant acknowledges that light freezing rain fell throughout the early morning hours before her fall. There being no competent evidence in the record to support an inference that East Village poorly designed, constructed or maintained the system of gutters and downspouts, there can be no doubt that the accumulation of ice occurred as a natural result of the freezing and thawing process. Accordingly, appellant's negligence claim fails as a matter of law.

{¶27} In short, the only reasonable conclusion to be drawn from the evidence is that appellant slipped and fell on a natural accumulation of ice, and that East Village owed appellant no duty either to remove the ice or to warn her of its existence. Accordingly, appellant's sole assignment of error is overruled.

## VI. DISPOSITION

{¶28} Having overruled appellant's assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.

_____