[Cite as *Bierl v. BGZ Assoc. II, L.L.C.*, 2013-Ohio-648.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

SUSAN BIERL,

      PLAINTIFF-APPELLANT,           CASE NO. 9-12-42

      v.

BGZ ASSOCIATES II, LLC,           O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Trial Court No. 10-CV-0527

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: February 25, 2013

APPEARANCES:

    *Patrick T. Murphy* for Appellant

    *Timothy J. Ryan* for Appellee

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Susan Bierl, appeals the order of the Court of Common Pleas of Marion County granting summary judgment in favor of Defendant-Appellee, BGZ Associates II, LLC ("BGZ"). On appeal, Bierl argues that the trial court erred by (1) finding that the open and obvious doctrine barred her common law negligence claim; (2) determining that her injury did not occur in a residential premises that is covered by R.C. 5321.04; and (3) finding that she was not a third party beneficiary of the lease between Bierl's daughter, Amber Bierl ("Amber"), and BGZ. For the reasons that follow, we affirm in part and reverse in part the trial court's judgment.

{¶2} On June 25, 2010, Bierl filed a complaint against BGZ seeking recovery for the injuries she sustained in a trip and fall accident at an apartment complex owned by BGZ. Bierl sought recovery based on three theories. First, BGZ was alleged to have violated the Landlord-Tenant Act. Second, Bierl claimed to be a third party beneficiary of the lease between BGZ and Amber and that BGZ breached its contractual obligation to maintain the accident site in a safe condition. Third, Bierl asserted that BGZ was subject to common law premises liability.

{¶3} Bierl attached Amber's lease with BGZ to her complaint. It included the following definition of the premises leased:

> **PREMISES LEASED.** [BGZ], in consideration of the rent to be paid, and covenants and agreements to be performed by [Amber] does herby lease the following described premises located at: 532 New Park Drive Apartment C (hereinafter referred to as the Premises). The Premises shall include the following personal property owned by [BGZ]: Dishwasher, disposal, range and refrigerator carpet, mini-blinds, and smoke detectors (Docket No. 1, Exhibit A, p. 1).

The lease went on to describe BGZ's duties to Amber, including the duty to "[k]eep all common areas of the Premises in a safe and sanitary condition[.]" (*Id.* at p. 4). The lease also included a variety of provisions that refer to guests and Amber's duty to control her guests' actions while they are on the property.

{¶4} During discovery, several witnesses were deposed regarding Bierl's trip and fall accident. Bierl's deposition provided the following relevant evidence. Her trip and fall occurred on October 17, 2009 when she was at the complex as Amber's guest. Bierl said that before the accident, she visited Amber at the complex three or four times a week.

{¶5} The purpose of Bierl's October 17, 2009 visit was to attend a party thrown by Amber at the apartment complex's clubhouse. After the party finished, Bierl assisted with the clean-up effort. Bierl stated that in the course of cleaning, Bierl carried one 30-to 40-pound garbage bag from the clubhouse to the nearest dumpster on the complex's property. She also testified that she carried the bag in front of her at waist level with both of her hands, which prevented her from seeing her feet.

{¶6} The dumpster was surrounded on three sides by white wooden walls that were of greater heights than the dumpster itself. Bierl said that while she had used other dumpsters at the apartment complex before the date of the accident, she had never used the dumpster closest to the clubhouse. Further, Bierl indicated that as she approached the dumpster from the clubhouse, she traveled a sidewalk that only allowed her to see the white wooden walls and not the open side. After passing the white wooden wall that concealed the dumpster, she immediately turned to the right so that she could throw the garbage bags into the dumpster. Shortly after turning, her right foot got caught on a knee-high one inch by one-quarter of an inch metal brace that ran diagonally from the ground to the side of the nearest white wall. Most of the brace was spray painted red but the top of it was painted white. After getting her foot caught, Bierl fell and sustained several injuries to her left leg.

{¶7} As to the trip and fall, Bierl testified as follows:

Q: Was there an area that you could not see in front of you or was the bag – were you carrying it low enough that you could see ahead of you?

A: I carried it low, yeah, so I could see where I was walking.

Q: So the bag wasn't effecting [sic] what you could see in front of you?

A: No, no.

* * *

Q: All right. So when you were turning that corner, was that familiar ground to you?

A: No.

Q: When you turned the corner, what were you looking at? * * * [J]ust after you left the blacktop and were turning, by this white post, what is first thing you saw on the other side of that – of this sideway that has the bracket * * *?

A: The dumpster.

* * *

Q: Were you looking for the place where you would be throwing it?

A: Yes.

Q: As you're turning the corner looking to see where the dumpster is, are you thinking how you would what, take the top off or whatever?

A: Yes. (*Id*. at p. 53-54).

Bierl further acknowledged that she was not looking down to see the brace or anything else that was on the ground and that it was sunny on the date of the accident. Bierl also admitted that had she been looking down, she probably could have seen the brace.

**{¶8}** Kathy Lange, another party attendee who was present during the clean-up effort, provided a slightly different version of events in her deposition regarding what Bierl was carrying before the accident. Lange initially testified

that Bierl was carrying one garbage bag in each hand when she headed toward the dumpster and that Bierl held the bags to her sides. However, later in her deposition, Lange indicated that Bierl carried the two bags in front of her.

{¶9} Lange also discussed the aftermath of the accident. She indicated that she heard Bierl scream and ran down the sidewalk to Bierl's aid. Upon reaching the dumpster area, Lange discovered that Bierl had suffered significant injuries, and placed a coat over her as she lay on the ground between the metal bracket and the dumpster. Lang testified as follows regarding her ability to see the metal bracket during her run to the dumpster area:

Q: When did you first notice the bracket, the little piece of metal?

A: After I was putting my coat on her. I had taken my coat to cover her up because it was cold.

* *

Q: Had you seen – you did not see that bracket until after she pointed it out?

A: No, I didn't. I wasn't actually – I was more concerned for her.

* *

Q: Could you see the bracket as you approached this area?

A: No.

Q: So from this point of view, as you approached the area, the bracket was not discernible?

A: No. (Lange Depo., p. 14-15, 18).

The following exchange also occurred regarding the metal bracket:

Q: * * * Was the bracket open and obvious? Was it something you could see?

A: No.

Q: Was it in the way?

A: Yes, obviously, it's very much in the way. (*Id*. at p. 23).

However, Lange acknowledged that if she was looking down and looking for the bracket, she would have seen it.

{¶10} Thomas Stanley, a maintenance employee for BGZ, testified regarding the apartment complex's four dumpster sites. He indicated that three of the dumpster sites do not have metal brackets but that the one Bierl used on the date of the accident did.

{¶11} The following exchange occurred regarding the use of the dumpsters:

Q: Tom, * * * people are supposed to be using these dumpsters, correct?

A: Correct.

Q: And, obviously, when they use the dumpsters, they are approaching the dumpsters because they are carrying garbage?

A: Right.

Q: It's foreseeable that people are carrying bags of garbage as they walk through to the dumpsters?

A: You would hope. (Stanley Depo., p. 12).

Stanley also testified to the foreseeability that an older female would carry a garbage bag in such a way as to obstruct the view of the metal brace that Bierl tripped over:

> Q:    It's foreseeable that an older lady carrying a garbage bag might use both hands to carry the bag in front of her?
>
> A:    Yes.
>
> Q:    In doing that process, that person's view of the bracket would be obscured, right?
>
> A:    Probably would, yes.  (*Id*. at p. 14-15).

{¶12} On May 2, 2011, BGZ filed its motion for summary judgment on all of the claims raised in Bierl's complaint.  Attached to the motion was the affidavit of Meredith Dirst, the property manager of the apartment complex.[1]  She attested that the metal brace was painted red and could be seen at a distance of 100 feet from the dumpster.  Pictures of the brace were affixed to the affidavit.  After Bierl filed her response, BGZ submitted a reply brief that included an additional affidavit from Dirst indicating that Amber had to pay $25 to reserve the clubhouse for the October 17, 2009 party.[2]

---

[1] The original affidavit attached to the motion was neither notarized nor signed.  To correct this, BGZ later submitted a properly signed and notarized affidavit.

[2] After these three filings, Bierl filed a "Supplement to Memorandum and Opposition to Motion for Summary Judgment" on January 27, 2012.  In this supplement, Bierl first argued that attendant circumstances obviated the applicability of the open and obvious doctrine.  BGZ moved that the supplement be stricken, but the trial court did not rule on BGZ's request.  Accordingly, we assume that the trial court denied the motion. *Seff v. Davis*, 10th Dist. No. 03AP-159, 2003-Ohio-7029, ¶ 16.

{¶13} The trial court granted BGZ's motion for summary judgment on June 19, 2012. The trial court found that the dumpster area was not part of the leased premises and accordingly ruled that the Landlord-Tenant Act did not apply to the trip and fall accident. It further found that Bierl was not a third party beneficiary of the lease between BGZ and Amber. Finally, it found, based on the photographs of the metal bracket and the purported analogousness of this matter to *Novik v. Kroger Co.*, 3d Dist. No. 9-11-21, 2011-Ohio-5737, that the bracket was an open and obvious danger that precluded Bierl from recovering on the basis of common law premises liability.

{¶14} Bierl timely appealed from this judgment, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT IN FINDING THAT THERE IS NO MATERIAL ISSUE OF FACT THAT THE BRACKET IN QUESTION WAS OPEN AND OBVIOUS THUS OBVIATING THE APPELLEE FROM A DUTY TO WARN OF THE DANGER.**

*Assignment of Error No. II*

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN THE COURT SUMMARILY DETERMINED THAT THE DUMPSTER AREA WHERE APPELLANT WAS INJURED WAS NOT PART OF THE "LEASED PREMISES" AND THAT THE PROTECTION AFFORDED THE TENANTS PER SECTION 5321.04 ORC ARE NOT**

**APPLICABLE TO THE APPELLANT WHILE LAWFULLY ON THE PREMISES.**

*Assignment of Error No. III*

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN SUMMARILY GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT FINDING THAT THE PLAINTIFF-APPELLANT AS A GUEST OF TENANT WAS NOT A THIRD PARTY BENEFICIARY OF THE CONTRACT BETWEEN THE TENANT [SIC] AND NOT AFFORDED THE SAME PROTECTION THE LAND LORD [SIC] OWED ITS TENANT PURSUANT TO THE CONTRACT.**

*Assignment of Error No. I*

{¶15} In her first assignment of error, Bierl argues that the trial court improperly granted summary judgment in favor of BGZ on her common law premises liability claim. Specifically, she contends that the trial court erred in finding that the open and obvious doctrine bars her negligence claim. We agree.

*Summary Judgment Standard*

{¶16} An appellate court reviews a summary judgment order *de novo*. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distris., Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d

217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id*. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶17} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id*. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id*.; Civ.R. 56(E).

*The Open and Obvious Doctrine*

{¶18} A negligence claim requires that the plaintiff show the "existence of a duty, breach of that duty, and an injury proximately caused by the breach."

*Miller v. Grewal Bros. Corp.*, 3d Dist. No. 7-11-12, 2012-Ohio-1279, ¶ 13, citing

*Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680

(1998). In regard to the existence of a duty, Ohio courts have found that

landowners do not owe a duty to warn land entrants of open and obvious dangers.

*E.g.*, *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 13

("[W]e reiterate that when courts apply [the open and obvious doctrine], they must

focus on the fact that the doctrine relates to the threshold issue of duty."); *Sidle v.*

*Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus ("An occupier

of premises is under no duty to protect a business invitee against dangers which

are known to such invitee or are so obvious and apparent to such invitee that he

may reasonably be expected to discover them and protect himself against them.").

Accordingly, the open and obvious doctrine operates to completely bar a

negligence claim and summary judgment is appropriate. *Lang v. Holly Hill Motel,*

*Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, ¶ 11 ("[W]hen a plaintiff is injured by

an open and obvious danger, summary judgment is generally appropriate because

the duty of care necessary to establish negligence does not exist as a matter of

law."). The reasoning behind this doctrine is that "the open and obvious nature of

the hazard itself serves as a warning. Thus, the owner or occupier may reasonably

expect that the person entering the premises will discover those dangers and take

appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64

Ohio St.3d 642, 644 (1982); *see also Armstrong* at ¶ 13 ("The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff.").

{¶19} "A hazard is open and obvious when in plain view and readily discoverable upon ordinary inspection." *Stewart v. AMF Bowling Ctrs., Inc.*, 3d Dist. No. 5-10-16, 2010-Ohio-5671, ¶ 15. Rather than rely on the plaintiff's subjective beliefs to determine the existence of such a hazard, we assess whether a reasonable person would have discerned the hazard. *Carnes v. Sieferd*, 3d Dist. No. 1-10-88, 2011-Ohio-4467, ¶ 19. In performing this analysis, we have noted that "'even an obstruction that sits low to the ground * * * may be open and obvious as a matter of law, so long as it is not concealed.'" *Mohn v. Wal-Mart Stores, Inc.*, 3d Dist. No. 6-08-12, 2008-Ohio-6184, ¶ 14, quoting *Johnson v. Golden Corral*, 4th Dist. No. 99CA2643 (Sept. 12, 2000).

{¶20} We find two cases to be of particular relevance to this matter. In *Kidder v. Kroger Co.*, 2d Dist. No. 20405, 2004-Ohio-4261, the Second District found that the trial court improperly granted summary judgment on the basis of the open and obvious doctrine. There, the plaintiff slipped on a puddle of water in a grocery store "immediately upon turning the corner at the end of an aisle." *Id*. at ¶

9. As a result, "she had little advance opportunity to perceive the hazard," which indicated that there was a genuine issue of material fact as to the open and obvious nature of the puddle. *Id.*

**{¶21}** Similarly, in *Miller v. Beer Barrel Saloon*, 6th Dist. No. 90-OT-050 (May 24, 1991), the plaintiff was at one end of an L-shaped bar when her husband beckoned her to come to the other side of the bar. The plaintiff consequently followed the bar, took a 90 degree turn, and within a couple of steps, she slipped on rolled up mats that were on the floor. The Sixth District reversed the trial court's grant of summary judgment in favor of the defendant property owner because the placement of the mats, combined with the plaintiff's path around the bar, rendered her unable to see the mats. *Id.*

**{¶22}** Nearly the same facts are present here. As reflected in Bierl's and Lange's depositions, Bierl's only reasonable pathway to the dumpster only allowed her to see the white walls around the dumpster until she turned the corner. According to Bierl, she fell shortly after turning the corner, suggesting that "she had little advance opportunity to perceive" the metal brace. *Kidder* at ¶ 9. In light of this evidence and the guidance of *Kidder* and *Miller*, we believe that there is a genuine issue of material fact as to whether the brace was open and obvious.

**{¶23}** Bierl's lack of familiarity with the dumpster area where she fell further bolsters our finding that such a genuine issue of material fact exists. In

many of our previous cases, we have found that the open and obvious doctrine applies where the plaintiff testified that he had been to the area of the accident before or knew that the hazard was present before the accident. *E.g.*, *Novik*, 2011-Ohio-5737, at ¶ 24; *Stewart*, 2010-Ohio-5671, at ¶ 17; *Lyle v. PK Mgt., LLC*, 3d Dist. No. 5-09-38, 2010-Ohio-2161, at ¶ 29; *Mohn,* 2008-Ohio-6184, at ¶ 16; *Williams v. Lowe's of Bellefontaine*, 3d Dist. No. 8-06-25, 2007-Ohio-2045, ¶ 22; *Brown v. Whirlpool Corp.*, 3d Dist. No. 9-04-12, 2004-Ohio-5101, ¶ 15; *Branham v. Moore*, 3d Dist. No. 11-2000-09 (Nov. 8, 2000); *Primavera v. Guthery*, 3d Dist. No. 9-96-11 (June 24, 1996). But, this matter implicates a very different dynamic. Bierl testified in her deposition that she had previously used dumpsters at the complex, but not the one that was closest to the clubhouse. Further, Stanley's deposition testimony established that the dumpster closest to the clubhouse was the only one that included a metal brace. From this evidence, it is apparent that Bierl had no familiarity with this dumpster area before her trip and that she had no knowledge of the metal brace. *See Miller*, *supra* (reversing grant of summary judgment in favor of the defendant property owner where the plaintiff had not been to the area of the accident before). In fact, the evidence suggests that Bierl would reasonably expect, from her trips to the complex's other dumpsters, that the brace would not be present. *See Smith v. Frederick C. Smith Clinic*, 189 Ohio App.3d 473, 2010-Ohio-4548, ¶ 28 (3d Dist.) (finding that open and obvious

doctrine did not bar negligence claim since reasonable person, based on common experience, would not expect an automatic sliding door to close on him while he passed through a doorway).

{¶24} In sum, we find that, when viewing all inferences in favor of Bierl, there is a genuine issue of material fact regarding the open and obvious nature of the metal brace. Consequently, the trial court erred in granting summary judgment in favor of BGZ on Bierl's premises liability claim.

{¶25} Accordingly, we sustain Bierl's first assignment of error.

*Assignment of Error No. II*

{¶26} In her second assignment of error, Bierl argues that the trial court erred in granting summary judgment to BGZ on her claim that BGZ violated the Landlord-Tenant Act. Specifically, Bierl argues that the trial court improperly found that the dumpster area was not part of the residential premises. We agree.

{¶27} This assignment of error revolves around our resolution of two issues. First, does the Landlord-Tenant Act create liability on a landlord's part to a tenant's social guest who is injured in an area that is not under the tenant's exclusive control? Second, if the Landlord-Tenant Act does create such liability, is the dumpster area implicated in this matter a "common area[] of the premises" that is covered by R.C. 5321.04(A)(3)? We answer both questions in the affirmative.

*The Landlord-Tenant Act*

**{¶28}** At common law, a landlord generally owed no duty to a residential tenant or his guest. *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417-18 (1994). However, the General Assembly partially abrogated the common law with the enactment of the Landlord-Tenant Act, which is codified in R.C. Chapter 5321. *Id*. at 419. The statute provides, in pertinent part, as follows:

> (A) A landlord who is a party to a rental agreement shall do all of the following: * * *
>
> (3) Keep all common areas of the premises in a safe and sanitary condition[.] R.C. 5321.04(A)(3).

Pursuant to R.C. 5321.01(C), a "residential premises" is defined as:

> [A] dwelling unit for residential use and occupancy and the structures of which it is part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant.

**{¶29}** It is well-established that if the language of a statute is plain and unambiguous, there is no need for a court to apply further rules of statutory interpretation. *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, ¶ 33 (3d Dist.). Words and phrases must be read in context and given their usual, normal, and customary meanings. R.C. 1.42; *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, ¶ 12. Further, "[i]t is an axiom of judicial interpretation that statutes be construed to avoid unreasonable or absurd consequences." *State ex rel. Seneca Cty. Bd. of Commrs.*, 175 Ohio App.3d 721, 2008-Ohio-736, ¶ 28 (3d

-17-

Dist.), quoting *State ex rel. Dispatch Printing Co. v. Wells*, 18 Ohio St.3d 382, 384 (1985).

**{¶30}** However, where the meaning of a statute is ambiguous, a court may examine its legislative history or consider the statute in pari materia to ascertain its meaning. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 34; *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph two of the syllabus. "In determining legislative intent when faced with an ambiguous statute, the court may consider several factors, including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40 (2001). Additionally, "'a court cannot pick one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.'" *Jackson* at ¶ 34, quoting *State v. Wilson*, 72 Ohio St.3d 334, 336 (1997). Further, a court is permitted to consider laws concerning the same or similar subjects to discern legislative intent. R.C. 1.49(D); *see also D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 20 ("Statutes relating to the same matter or subject * * * are in patri materia and should be read together to ascertain and effectuate if possible the legislative intent.").

*A Landlord's Liability under the Landlord-Tenant Act to Guests*

**{¶31}** *Shump* contains the Ohio Supreme Court's first discussion of a landlord's potential liability for a social guest's injury under the Landlord-Tenant Act. There, the plaintiff's decedent was the guest of a tenant who leased a two-story townhouse from the landlord. The landlord only installed one smoke detector and it was located on the second floor of the townhouse. When a fire began on the first floor of the townhouse, the smoke detector did not go off until it was too late for the decedent to escape. The plaintiff then brought a wrongful death claim alleging that the landlord was negligent in the installation of the smoke detector. *Shump*, 71 Ohio St.3d at 415-16.

**{¶32}** Regarding the plaintiff's common law premises liability claim against the landlord, the Court stated as follows:

> [T]he common-law classifications of trespasser, licensee, and invitee determine the legal duty that a tenant owes others who enter upon rental property that is in the exclusive possession of the tenant. However, with regard to areas within the exclusive possession of a tenant, the common-law classifications do not affect the legal duty that a landlord owes a tenant or others lawfully upon the leased premises. *Id*. at 417.

As a result, the Court found that "[a] landlord owes the same duties to persons lawfully upon the leased premises as the landlord owes to the tenant." *Id*. at syllabus.

{¶33} Although the plaintiff in *Shump* did not assert a claim based on the Landlord-Tenant Act, the Court still addressed the applicability of its finding on the statute. In doing so, it stated as follows:

> We do not believe that the [Landlord-Tenant Act] alters this well-settled common-law principle. * * * Thus, the obligations imposed upon a landlord under R.C. 5321.04 would appear to extend to tenants *and* to other persons lawfully upon the leased premises. (Emphasis sic.) *Id.* at 420.

Moreover, the Court reiterated its holdings in *Marqua v. Mann*, 109 Ohio St. 56 (1923), and *Stackhouse v. Close*, 83 Ohio St. 339 (1911), "that a landlord may be held liable to a tenant's guest for the breach of a statutory duty imposed upon the landlord." *Shump* at 420.

{¶34} BGZ seizes upon *Shump*'s use of the term "leased premises" when referring to the scope of a landlord's duties to guests and argues that the Landlord-Tenant Act only creates liability on a landlord's part if the tenant's guest suffers his or her injury while in an area that is under the tenant's exclusive control. BGZ also cites to several cases in which the Ninth District Court of Appeals applied *Shump* and found that R.C. 5921.04 did not inculpate a landlord for the injuries that a guest suffered while in the common areas of the landlord's premises. *E.g.*, *Shumaker v. Park Lane Manor of Akron*, 9th Dist. No. 25212, 2011-Ohio-1052, ¶ 12; *Owens v. French Village Co.*, 9th Dist. No. 99CA0058 (July 26, 2000); *Rios v. Shauck*, 9th Dist. No. 97CA006753 (June 3, 1998); *Sanders v. Bellevue Manor*

*Apartments*, 9th Dist. No. 95CA006067 (Jan. 3, 1996). However, after reviewing *Shump* and the Landlord-Tenant Act, we disagree with the Ninth District's position. Instead, we adopt the Tenth District's reasoning in *Mann v. Northgate Investors, LLC*, 10th Dist. No. 11AP-684, 2012-Ohio-2871, *appeal accepted*, 133 Ohio St.3d 1463, 2012-Ohio-2871,[3] and likewise find that the statute creates liability on a landlord's part for the injuries sustained by guests in common areas of a residential premises.

{¶35} In *Mann*, the plaintiff was injured while visiting a tenant who leased an apartment unit from the defendant. The plaintiff fell on the staircase leading to the tenant's apartment, allegedly because the defendant negligently failed to replace a burned-out light bulb. The trial court granted the defendant's motion for summary judgment on the basis that R.C. 5321.04 did not apply. *Id*. at ¶ 2-5. On appeal, the defendant, like BGZ here, cited to *Shump*'s "leased premises" language and the Ninth District's case law to support its case for affirmance. *Id*. at ¶ 15. The Tenth District disagreed and reversed the trial court, finding that *Shump* supported the proposition that "landlords owe to guests of a tenant in the common areas the same duties the landlord owes to a tenant." *Id*. at ¶ 20. Other courts in this state have reached the same conclusion. *E.g.*, *Smith v. Finn*, 6th Dist. No. L-

---

[3] *Mann* is currently pending before the Supreme Court of Ohio. The certified question for the Court's review is "[w]hether a landlord owes the statutory duties of R.C. 5321.04(A)(3) to a tenant's guest properly on the premises but on the common area stairs at the time of injury?"

04-1244, 2005-Ohio-1547, ¶ 13-14; *Hodges v. Gates Mills Towers Apt. Co.*, 8th Dist. No. 77278 (Sept. 28, 2000). We adopt the logic of *Mann* for three reasons.

**{¶36}** First, the Tenth District's view is consistent with the language of the Landlord-Tenant Act. R.C. 5321.12 provides that "[i]n any action under Chapter 5321. of the Revised Code, *any party* may recover damages for the breach of contract or a breach of any duty that is imposed by law." (Emphasis added.) R.C. 5321.12. The use of the term "any party" is instructive. Rather than use "tenant" or "landlord," both of which are defined terms in R.C. 5321.01, or refer to particular types of guests, the General Assembly elected to use the expansive term "any party." Had the General Assembly intended to maintain a distinction between guests who are injured in the common areas of a residential premises and guests who are injured within the tenant's defined leasehold estate, it certainly would have chosen a more limiting term than "any party."

**{¶37}** Second, the outcome and reasoning of *Mann* is also in concert with the holding in *Shump*. Since *Shump* involved the landlord's alleged negligence in installing a smoke detector within the apartment unit leased by a tenant, its holding does not mandate that the courts exculpate landlords from liability under the Landlord-Tenant Act for a guest's injuries that were sustained in common areas. Rather, *Shump* leaves that issue unresolved and indeed it suggests that such injuries are covered by the statute.

**{¶38}** As noted by the Tenth District in *Mann*, the Court explicitly rejected the reasoning found in *Rose v. Cardinal Industries, Inc.*, 68 Ohio App.3d 406 (6th Dist. 1990), and *Seiger v. Yeager*, 44 Ohio Misc.2d 40 (C.P. 1988). *Shump*, 71 Ohio St.3d at 420. In *Rose*, the plaintiff was injured while visiting a tenant who leased an apartment unit from the defendant. The plaintiff slipped on wet grass immediately in front of the sidewalk that led to the tenant's unit. *Rose* at 407. The Sixth District affirmed a grant of summary judgment in favor of the defendant because "in the absence of any clear statutory provision or case law specifically extending the duties and remedies of R.C. 5321.04 to social guests of tenants," it would not find a violation of the statute. *Id.* at 410; *see also Sieger* at 41-42 (granting summary judgment to landlord-defendant where plaintiff-social guest injured herself in driveway of residential rental property she was visiting). By rejecting *Rose* and *Sieger*, both of which involve social guests injuring themselves in common areas, the Supreme Court sent a clear signal in *Shump* – landlords are liable under R.C. Chapter 5321 when social guests of their tenants injure themselves in common areas.

**{¶39}** Third, *Mann* is consistent with our decision in *Elliott v. Massey*, 3d Dist. No. 3-94-23 (Mar. 20, 1995). There, the plaintiff was a social guest of a tenant who leased residential property from the defendant. In the course of the visit, the plaintiff slipped and fell on a slab that led to the property. We reversed

the trial court's grant of summary judgment in favor of the defendant because "R.C. 5321.04 applies to a tenant as well as a tenant's guest; thus, the duty owed is not determined by an individual's classification as business invitee or licensee." *Id.*; *see also Saunders v. Greenwood Colony*, 3d Dist. No. 14-2000-40 (Feb. 28, 2001) (noting that "common law distinctions continue to control only as to the relationship between the guest and the tenant"). This finding hints that we do not view the Landlord-Tenant Act as only inculpating a landlord for the injuries suffered by a tenant's guest within the areas solely controlled by the tenant. Accordingly, following *Elliott*'s guidance requires us to find that the Landlord-Tenant Act inculpates a landlord for the injuries that a tenant's guest sustains in common areas.

{¶40} We are not persuaded by BGZ's argument that the use of "leased premises" in *Shump* indicates that a landlord cannot be liable under the Landlord-Tenant Act for the injuries a tenant's guest suffers in the common areas of a residential premises. A review of *Shump* reveals that the Court used both "leased premises" and "rental property" when referring to the area which the landlord was responsible for maintaining. *E.g.*, *Shump*, 71 Ohio St.3d at 419 ("The proposition that a landlord owes the same duties to persons lawfully upon the rental property as the landlord owes to the tenant is not unique to Ohio."). The Court's interchangeable use of these two terms suggests that the Court did not intend its

use of "leased premises" to convey a specific meaning that is different from the definition of "residential premises" that is provided in R.C. 5321.01(C).

{¶41} Further, the Court unequivocally stated that "the obligations imposed upon a landlord under R.C. 5321.04 would appear to extend to tenants *and* to other persons lawfully upon the leased premises." (Emphasis sic.) *Id*. at 420. R.C. 5321.04(A)(3), which the Court explicitly extends to both tenants and guests, refers to a landlord's duty to "keep all common areas of the premises in a safe sanitary condition" in cross-reference to the statutory definition of residential premises in R.C. 5321.01(C). This statement in *Shump,* when read in conjunction with R.C. 5321.01(C) and 5321.04(A)(3), indicates that the Court intended to place landlords under a duty to maintain the "common areas" of the "residential premises" as those terms are used and defined in the statute. As a result, any use of "leased premises" within the body of *Shump* was not intended to contravene or vary the dictates of the statute.

{¶42} Based on the plain terms of the Landlord-Tenant Act, the Ohio Supreme Court's reasoning in *Shump*, and the Tenth District's decision in *Mann*, we find that the Landlord-Tenant Act allows social guests of tenants to maintain actions against landlords for the injuries that the guests sustain in the common areas of residential properties they are visiting. As a result, BGZ is potentially

liable for Bierl's injuries provided that Bierl sustained her injury in a common area of the apartment complex in which Amber resided.

*BGZ's Liability for Bierl's Injuries*

**{¶43}** In its appellate brief, BGZ admits that the dumpster area is a common area. (Appellee's Br., p. 12). Indeed, Stanley's deposition testimony that the dumpster areas are generally available for the use of tenants at the complex confirms this admission. Based on this, we find that the dumpster area is a common area and that, pursuant to R.C. 5321.04(A)(3), BGZ had the duty to maintain the dumpster area in a "safe and sanitary condition" for the benefit of tenants and their guests, including Bierl. As a result, the trial court's finding that the Landlord-Tenant Act did not apply to Bierl's injuries was erroneous.

**{¶44}** In sum, the Landlord-Tenant Act applies with equal force to social guests of tenants regardless of whether they are injured in the common areas of a residential premises or within areas solely controlled by tenants. As such, because the dumpster area is a common area of the apartment complex owned by BGZ, it owed a duty under the Landlord-Tenant Act to maintain the dumpster area in a safe condition for the benefit of Bierl, who was a guest of Amber, one of BGZ's tenants. Consequently, we find that, when viewing all inferences in favor of Bierl, there is a genuine issue of material fact as to whether BGZ violated the Landlord-

Tenant Act and the trial court erred in granting summary judgment on Bierl's claim under the Landlord-Tenant Act

**{¶45}** Accordingly, we sustain Bierl's second assignment of error.

*Assignment of Error No. III*

**{¶46}** In her third assignment of error, Bierl contends that the trial court erroneously granted summary judgment to BGZ on her breach of contract claim. Specifically, Bierl claims that she is a third party beneficiary of the lease between Amber and BGZ. We disagree.

**{¶47}** To enforce a contract, a party must be an intended beneficiary and not a mere incidental beneficiary. *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988). In *Hill*, the Supreme Court of Ohio adopted the Second Restatement's definitions of intended and incidental beneficiaries. The definitions are as follows:

> (1)   * * * [A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either:
>
> (a)   the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b)   the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2)   An incidental beneficiary is a beneficiary who is not an intended beneficiary.  2 Restatement of the Law 2d, Contracts, Section 302 (1981).

**{¶48}** The Court also adopted the "intent to benefit" test to delineate between intended and incidental beneficiaries. The test is as follows:

> "[I]f the promisee * * * intends that a third party should benefit from the contract, then the third party is an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract." *Hill* at 40, quoting *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980).

The *Hill* test remains viable in Ohio courts. *E.g.*, *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, ¶ 10-11 (applying *Hill* test).

**{¶49}** The Supreme Court has provided the following guidance for the application of the *Hill* test:

> Courts generally presume that a contract's intent resides in the language the parties choose to use in the agreement. Only when the language of a contract is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of a contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Ohio law thus requires that for a third party to be an intended beneficiary under the contract, there must be evidence that the contract was intended to directly benefit that third party. Generally, the parties' intention to benefit a third party will be found in the language of the agreement. (Internal citations and quotations omitted.) *Id*. at ¶ 12.

Further, courts have noted that for a person to claim intended third party beneficiary status, the contracting parties must have entered into the contract for the primary benefit of that person. *E.g.*, *Caruso v. Natl. City Mtge. Co.*, 187 Ohio App.3d 329, 2010-Ohio-1878, ¶ 23 (1st Dist.). Nevertheless, there is no

requirement that the contract explicitly identify the third party beneficiary. *First Fed. Bank v. Angelini*, 3d Dist. No. 3-07-04, 2007-Ohio-6153, ¶ 11.

{¶50} The record indicates that BGZ and Amber did not enter into their lease agreement to primarily or directly benefit Bierl. The lease's purpose was to govern the contractual relationship between BGZ and Amber for the use of the leased premises. Both BGZ and Amber received the primary benefits of the lease. Namely, BGZ received monthly rental payments and Amber's agreement to abide by her duties listed in the lease while Amber received the right to occupy her apartment unit and BGZ's agreement to abide by its duties listed in the lease. Meanwhile, Bierl merely received the incidental benefit of being able to visit Amber at her apartment unit.

{¶51} Further, the lease includes two provisions identifying the persons who could legally occupy the apartment unit. The only persons identified in these sections were Amber, her son, and her then-boyfriend. None of the provisions refer to Bierl or any other guest, suggesting that the Lease was not made for her primary benefit.

{¶52} In support of her intended third party beneficiary claim, Bierl cites several passages in the lease that refer to guests. But, a review of these passages reveals that they only relate to either Amber's responsibility for her guests' actions or BGZ's liability to guests for its negligence. These provisions do not manifest

an intent to primarily benefit Bierl. Rather, they evince Amber's and BGZ's agreement regarding Amber's use of the leased premises and the parties' respective duties in ensuring the premises' maintenance during the lease period. Again, Amber received the primary benefit of the parties' agreement in this regard and Bierl merely received an incidental benefit.

{¶53} In sum, Bierl was an incidental third party beneficiary of Amber's lease agreement with BGZ. As such, she is unable to enforce the obligations included in the lease and the trial court was correct in granting summary judgment in favor of BGZ on Bierl's third party beneficiary claim.

{¶54} Accordingly, we overrule Bierl's third assignment of error.

{¶55} Having found no error prejudicial to Bierl in the third assignment of error, but having found error prejudicial to Bierl in the first and second assignments of error, we affirm in part and reverse in part the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part, and*
*Cause Remanded*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**