[Cite as *Middleton v. Clarky's Closeouts*, 2025-Ohio-1414.]

## IN THE COURT OF APPEALS OF OHIO
### ELEVENTH APPELLATE DISTRICT
### TRUMBULL COUNTY

| | |
|---|---|
| TERRI MIDDLETON, et al., | **CASE NO. 2024-T-0086** |
| Plaintiffs-Appellants, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| CLARKY'S CLOSEOUTS, LLC, | |
| Defendant-Appellee. | Trial Court No. 2024 CV 00299 |

## OPINION AND JUDGMENT ENTRY

Decided: April 21, 2025
Judgment: Reversed; remanded

*John Regginello*, Rummell, Curry & Regginello Law Firm, 400 Huntington Bank Building, P.O. Box 6565, Youngstown, OH 44501 (For Plaintiffs-Appellants).

*Kristen E. Campbell*, Pelini, Campbell & Ricard, LLC, Bretton Commons, Suite 400, 8040 Cleveland Avenue, N.W., North Canton, OH 44720 (For Defendant-Appellee).

EUGENE A. LUCCI, J.

{¶1} Appellants, Terri and David Middleton, appeal the entry granting summary judgment to appellee, Clarky's Closeouts, LLC ("Clarky's"). For the reasons that follow, we reverse the judgment and remand this matter to the trial court for further proceedings consistent with this opinion.

{¶2} In 2020, while the Middletons, a married couple, were shopping in a retail store operated by Clarky's, Mrs. Middleton tripped on a hole in the store's concrete floor, causing her to fall forward. In 2022, the Middletons filed a complaint, which they dismissed

and refiled in 2024, against Clarky's, alleging that Mrs. Middleton sustained serious injuries because of the fall, and asserting claims of negligence and loss of consortium.

**{¶3}** Clarky's answered the complaint and thereafter moved for summary judgment, maintaining the hole in the floor was open and obvious, and thus it was entitled to judgment as a matter of law on the Middletons' claims. The trial court agreed and granted summary judgment in favor of Clarky's in a judgment entry dated September 26, 2024. The Middletons timely noticed an appeal from this entry.

**{¶4}** In their two assigned errors, the Middletons argue:

> [1.] The trial court erred in granting Clarky's motion for summary judgment when evidence was presented which clearly demonstrated that the trial court misapplied the open and obvious doctrine in a situation where plaintiff was rounding a corner at the end of an aisle.

> [2.] The trial court erred in granting Clarky's motion for summary judgment when evidence was presented which clearly demonstrated that Terri Middleton did not receive advance warning of the danger from her husband or from Clarky's.

**{¶5}** "We review decisions awarding summary judgment de novo, i.e., independently and without deference to the trial court's decision." *Hedrick v. Szep*, 2021-Ohio-1851, ¶ 13 (11th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

> Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977); *Allen v. 5125 Peno, LLC*, 2017-Ohio-8941, ¶ 6 (11th Dist.), citing *Holliman v. Allstate Ins. Co.*, 1999-Ohio-116. "The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Allen* at ¶ 6, citing *Dresher v. Burt*, 1996-Ohio-107. "If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial." *Allen* at ¶ 6, citing *Dresher* at ¶ 18.

{¶6} In its motion for summary judgment, Clarky's maintained that no triable issue existed as to whether the hole in which Mrs. Middleton tripped constituted an open- and-obvious hazard, and thus it was entitled to judgment as a matter of law on the Middletons' claims.

{¶7} As set forth above, the Middletons asserted a claim for negligence and a derivative claim for loss of consortium. "'[I]n order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom.'" *McFadden v. Discerni*, 2023-Ohio-1086, ¶ 13 (11th Dist.), quoting *Armstrong v. Best Buy Co., Inc.*, 2003-Ohio-2573, ¶ 8.

{¶8} The nature of the duty owed in a premises liability case depends on the relationship between the parties. *Hamrock v. Ams*, 2020-Ohio-1335, ¶ 20 (11th Dist.). Here, there is no dispute that the Middletons were business invitees of Clarky's. *See Scheibel v. Lipton*, 156 Ohio St. 308 (1951), paragraph one of the syllabus (an invitee is "one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest"). Accordingly, Clarky's owed the Middletons a duty to "exercise ordinary care to guard . . . against danger" and "to render the premises

reasonably safe . . . ." *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175 (1925), paragraph one of the syllabus. However, "[a] business owner is not an insurer of its invitees' safety." *Francis v. Loviscek*, 2018-Ohio-4279, ¶ 32 (11th Dist.), citing *Occhipinti v. Bed Bath & Beyond, Inc.*, 2011-Ohio-2588, ¶ 19 (11th Dist.). Instead, a business owner has a duty to warn invitees "of actual dangers on the property if [the business owner's] knowledge of those dangers is superior to that of the invitees." *Francis* at ¶ 32, citing *Occhipinti* at ¶ 20.

{¶9} Nonetheless, the business owner has no duty "'to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that [s]he may reasonably be expected to discover them and protect h[er]self against them.'" *Fabian v. May*, 2021-Ohio-2882, ¶ 9 (11th Dist.), quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. "'When applicable . . ., the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims.'" *Fabian* at ¶ 9, quoting *Armstrong* at ¶ 5. "'The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning.'" *Fabian* at ¶ 9, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 1992-Ohio-42. "'Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Fabian* at ¶ 9, quoting *Simmers* at 644.

{¶10} Therefore, when courts apply the open-and-obvious doctrine:

> [T]hey must focus on the fact that the doctrine relates to the threshold issue of duty. By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not

> what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff.

*Armstrong*, 2003-Ohio-2573, at ¶ 13; *Sabo v. Zimmerman*, 2012-Ohio-4763, ¶ 15 (11th Dist.). Accordingly, "[f]or the open-and-obvious doctrine to apply, a hazardous condition need not be observed but only observable." *Fabian* at ¶ 20, citing *Hopkins v. Greater Cleveland Regional Transit Auth.*, 2019-Ohio-2440, ¶ 16 (8th Dist.).

{¶11} Here, Clarky's relied on the Middletons' deposition testimony in support of its position that the hole in its floor was open and obvious.

{¶12} During her deposition, Mrs. Middleton explained that she and her husband visited Clarky's to shop for exterior doors on the date at issue. This was the first time the Middletons had been to Clarky's, which Mrs. Middleton described as a large warehouse-type closeout store, divided into rooms, with a concrete floor. As Mrs. Middleton was walking through Clarky's, she did not notice anything in particular about the condition of the floor. After Mrs. Middleton and her husband looked at the doors in one room of Clarky's, they turned a corner to exit the room, with Mrs. Middleton following behind her husband. On her first or second step around the corner, Mrs. Middleton tripped and fell forward after she stepped into a hole in the floor. Mrs. Middleton did not observe the hole until after her fall. She described the hole as at least two to three inches in depth. She could not recall the width of the hole, but she did note that her entire left foot fit within the hole. Mrs. Middleton explained that the hole appeared to have been created by the removal of something from the building's structure, like a pole. During the questioning of Mrs. Middleton, the following exchange occurred:

Q. All right. So as you're walking around the corner, where were you looking? Were you looking ahead or were you looking down at the floor?

A. I was looking at my husband and looking to see if there was anything else along the wall, if there were any pallets or stuff like I mean, you had to watch out for the things that were sitting around.

Q. Okay. So you had to watch out because things weren't in a nice pristine line as you were walking through the -- through the store?

A. Yes.

Q. So you knew you had to kind of watch where you were going to make sure you didn't step on things that were on display?

A. Right.

{¶13} Thereafter, Mrs. Middleton again confirmed that she recalled, prior to falling, looking at her husband's back.

{¶14} In his deposition, Mr. Middleton described the hole as a depression in the floor that was three to four inches in depth, and about two feet by two feet in length and width. Mr. Middleton maintained that the depression was located in an approximate eight-foot-wide entry/exit way separating the room of the store containing plumbing supplies from the room of the store containing doors. When exiting the room containing the doors, Mr. Middleton saw the depression prior to his wife's fall, but he did not have the opportunity to warn her.

{¶15} Although, during their depositions, the Middletons referred to and created diagrams of the area where the fall occurred, these deposition exhibits were not submitted with the transcripts for the court's review.

{¶16} In determining that no triable issue existed as to the condition of the floor being open and obvious, the trial court stated:

> Upon review, the Court finds that the hole that caused [Mrs. Middleton] to fall was objectively observable, and avoidable, if one only looked at the ground. [The Middletons] have not produced any evidence that gives rise to a genuine issue of fact that the corner [the Middletons] walked around obscured the hole. Instead, the evidence demonstrates that the hole was not covered or concealed in any way and was large enough that it was readily visible. Further, [Mr. Middleton], who was walking the same path as [Mrs. Middleton], saw the hole and tried to tell [Mrs. Middleton] to watch out for it. Given the circumstances regarding the layout of the store and sporadic display of products, [Mrs. Middleton] admitted that she had to watch where she was going to avoid stepping on any products on display. Unfortunately, at this moment, she was not watching where she was going but instead was looking up at her husband's back.

{¶17} On appeal, in their first assigned error, the Middletons maintain that the trial court erred in granting summary judgment because "a hole in a floor that is encountered just after rounding a corner is not an open and obvious condition." In their second assigned error, the Middletons argue that their depositions do not establish that either Clarky's or Mr. Middleton warned Mrs. Middleton of the hole in the floor prior to her fall.

{¶18} We first address the Middletons' second assignment of error. Whether Mrs. Middleton had warning of the hole was not a basis on which the trial court relied in granting summary judgment to Clarky's. Instead, the court's decision was based on the open-and-obvious doctrine, which, if applicable, obviated any duty of Clarky's to provide Mrs. Middleton with a warning of the hole. Further, the trial court made no determination that Mr. Middleton warned his wife of the hole prior to her encountering it. Instead, the trial court determined that the deposition testimony indicated that Mr. Middleton turned to Mrs. Middleton with *the intention* of warning her of the hole. Because the trial court's judgment

did not turn on whether Mrs. Middleton was warned of the hole prior to her fall, the Middletons' second assigned error lacks merit.

{¶19} With respect to the Middletons' first assigned error, we note that the deposition transcripts provide a limited description of the premises and the location of the hole and surrounding area. Although Mr. Middleton observed the hole, it is not clear from the depositions whether he observed it prior to, during, or after encountering it, only that he observed it prior to his wife's fall. Further, Mr. Middleton did not have the opportunity to warn Mrs. Middleton of the hole prior to her fall, because, as he stated, "before [he] could turn around and say anything to her, she was on her face. It was . . . that quick." Mrs. Middleton maintained that her left foot entered the hole on her first or second step around the corner.

{¶20} Viewing the summary judgment evidence most strongly in favor of the Middletons, reasonable minds could infer that the hole was located immediately around the corner of a walkway, where one would not observe it until it was encountered. Thus, this case is similar to those cited by the Middletons, which hold that genuine issues of material fact exist as to whether a hazard was open and obvious where the hazard is located in an area where customers would reasonably be expected to turn or change direction. *See Bierl v. BGZ Assoc. II, L.L.C.*, 2013-Ohio-648, ¶ 22 (3d. Dist.) (where the plaintiff tripped on a bracket after turning the corner of a dumpster, genuine issue of material fact remained as to whether the bracket was open and obvious); *Henry v. Dollar Gen. Store*, 2003-Ohio-206, ¶ 14 (2d Dist.) (where a store propped open an exit door with a cement block, reasonable minds might conclude that the store "placed the block in a location where customers could be expected to turn or change direction, thereby limiting

their opportunity to see the block and avoid it"); and *Bumgardner v. Wal-Mart Stores, Inc.*, 2002-Ohio-6856, ¶ 26 (2d Dist.) (holding that reasonable minds could disagree whether a pallet "located at the end of, but at the back side of, a row of shelves that were stocked with merchandise" was open and obvious, and "a reasonable person could find that the pallet was located in an area where a customer would be expected to turn or change direction").

**{¶21}** Further, although Mrs. Middleton was looking at her husband's back and the merchandise when rounding the corner, as set forth above, the open and obvious test "properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong*, 2003-Ohio-2573, ¶ 13.

**{¶22}** From the summary judgment evidence presented, we cannot say that there is no triable issue as to whether the hole constituted an open-and-obvious hazard. Therefore, the court erred in granting summary judgment to Clarky's, and the Middletons first assigned error has merit.

**{¶23}** Accordingly, the judgment is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellants' first assignment of error has merit, and the second assignment of error is without merit.  It is the judgment and order of the court that the judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Costs to be taxed against appellee.

_____
JUDGE EUGENE A. LUCCI

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.